UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
EDUARD LEYTMAN,                                        :
                                                       :
                        Plaintiff,              :
                                                       :        REPORT AND
       -against-                                     :        RECOMMENDATION
                                                       :        (NOT FOR PUBLICATION)
TRANSPORTATION SECURITY                                :
ADMINISTRATION,                                        :        17-CV-04455 (WFK)(MMH)
                                                       :
                        Defendant.              :
------------------------------------------------------------------x

**MARCIA M. HENRY, United States Magistrate Judge:**

       In 2017, *pro se* Plaintiff Eduard Leytman ("Leytman" or "Plaintiff") filed the present action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b) and 2671-2680, alleging that a Transportation Security Administration ("TSA") agent assaulted him during a pre-flight screening at John F. Kennedy International Airport ("JFK"). (1st Am. Compl., § III, ECF No. 11.) At a July 8, 2021 status conference before the Honorable William F. Kuntz, II, Plaintiff, represented by appointed counsel, moved for disclosure of additional surveillance videos taken at the security checkpoint on the date TSA agents allegedly assaulted him. (ECF No. 63). Judge Kuntz referred the motion to me for a Report and Recommendation. (*Id.*) For the reasons set forth below, I recommend that the request be GRANTED IN PART.

**I.    Background**

       Leytman alleges that he was assaulted during security screening at a TSA checkpoint at JFK, Terminal 4, on February 1, 2017. (1st Am. Compl. § III, ECF No. 11.) Leytman claims that the TSA agent "repeatedly" hit him in the groin area while patting him down during the search, causing him serious pain and distress. (*Id.*) Leytman further alleges that TSA denied his requests pursuant to the Freedom of Information Act for video footage of the incident. (*Id.*)

On May 31, 2018, proceeding *pro se*, Leytman advised the Court that the government had not responded to his discovery demands in a timely manner. (5/31/2018 Pl.'s Ltr., ECF No. 26.) In response, the government stated that it had produced video footage of Leytman at his pre-flight screening, among other disclosures. (*See* 6/8/2018 Def.'s Ltr., ECF No. 28.) Leytman later claimed that the video footage was forged and incomplete, omitted audio, and did not accurately represent the events that occurred, and moved to compel production. (*See* 6/12/2018 Pl.'s Ltr., ECF No. 30; Pl.'s Mot. to Compel, ECF No. 32.) The Honorable Lois Bloom, the previously assigned magistrate judge, denied the motion to compel and Plaintiff's subsequent motion for reconsideration. (ECF Nos. 37, 39.)

On July 8, 2021, the parties (with Plaintiff now represented by appointed counsel) discussed the surveillance videos at a status conference before Judge Kuntz. Plaintiff's counsel alleged that Leytman had learned through a conversation with a TSA witness, Mr. Lee, that there were actually 11 videos of the incident, rather than the four that had been already produced. (*See* ECF No. 63.) The defendant stated that it had produced four videos to Plaintiff and that 11 additional videos of surveillance did not include footage of the Plaintiff. Judge Kuntz ordered the government to submit the eleven videos referenced at the conference to the undersigned for *in camera* review. (*Id.*) The next day, Defendant submitted the four previously produced video files and an additional twelve video files for my review. (ECF No. 64.)

At a status conference on August 25, 2021, I advised the parties that I intended to recommend that the defendant produce at least three of the twelve additional video files to Plaintiff. (*See* 8/25/2021 Minute Entry & Order.)

## II.   Discussion

### A.   Applicable Law

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). "Relevance" under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018) ("Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action") (internal citations omitted).

In determining whether the discovery sought is proportional to the needs of the case, courts generally consider the following factors: (1) whether the discovery is unreasonably cumulative or duplicative; (2) whether the party seeking the discovery had ample opportunity to obtain the information sought through other means; and (3) whether the burden or expense of the discovery outweighs its likely benefit. *Uni-Sys., LLC. v. United States Tennis Ass'n, Inc.*, No. 17-CV-147 (KAM)(CLP), 2020 WL 8266015, at *7 (E.D.N.Y. July 6, 2020).

### B.   Analysis

The Court reviewed sixteen videos in total and summarizes its findings in the chart listed in the Appendix to this Order.  Each of the videos depicts a security checkpoint at JFK where TSA agents screen passengers with a body scanner and their luggage with an X-ray machine.  The videos do not have any audio.  As identified in the Appendix, the government produced Videos A

3

through D (the "Produced Videos") to the Plaintiff.[1] These videos range in duration from one-and one-half minutes to nearly six minutes. Videos 1 through 12 are additional videos that the government withheld from the Plaintiff and submitted for *in camera* review. This group of videos has more footage, ranging from over four minutes to nearly 23 minutes.

### 1. *Responsive Videos*

Plaintiff is visible in Videos 1, 4, and 10, which show different camera angles of the security checkpoint. Plaintiff can be seen either entering the security checkpoint area, passing through the body scanner, standing for the physical inspection, and/or retrieving his luggage and exiting the area. The footage in Videos 1, 4, and 10 is directly relevant to Plaintiff's claim that the TSA officer improperly assaulted him at the security checkpoint. Fed. R. Civ. P. 26(b)(1).

Notably, the footage in Videos 1, 4, and 10 appears to be similar to that depicted in the Produced Videos. Specifically:

- The footage in Video 1, a nearly 23-minute video, depicts Plaintiff from the same camera angle and for the same duration (approximately 5 minutes and 33 seconds) as the footage depicted in Video D, a nearly six-minute video.

- Similarly, Video 4, over 22 minutes long, is taken from the same camera angle as Video B. Plaintiff is visible for nearly the same period in both videos: approximately 1 minute and 34 seconds in Video 4 and one-and-one-half minutes in Video B.

- Finally, in Video 10, Plaintiff is visible for 2 minutes and 55 seconds out of a total of 22 minutes and 21 seconds of footage. The duration and camera angle match the footage of Plaintiff in Video C.

Despite the similarities, production of Videos 1,4, and 10 would not be ***unreasonably*** cumulative. *Uni-Sys., LLC.*, 2020 WL 8266015 at *7 (emphasis added). For example, comparing Videos 1, 4,

---

[1] The Court reviewed the Produced Videos as a baseline to identify the Plaintiff and to compare them to the remaining videos.

and 10 to the Produced Videos may be useful to any motions contesting the sequence of events during Plaintiff's encounter with the TSA officer, or to corroborate or contradict the deposition testimony of defense witnesses regarding the circumstances leading to the search.  Plaintiff also could not obtain these specific videos from any other source besides the TSA.  Accordingly, Plaintiff is entitled to review these videos to advance his claims.

Videos 1, 4, and 10 also include footage of other passengers and TSA personnel at the checkpoint that is not possible to view independently of the footage of the Plaintiff.  At the August 25, 2021 status conference, when I provided my preliminary rulings, the government requested to produce the videos subject to a protective order to shield any sensitive security information, and the defense agreed.  (*See* 08/25/2021 Minute Entry & Order.)  A protective order would also protect the privacy interests of the other passengers and TSA personnel depicted in the videos.  *See Barella v. Vill. of Freeport*, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) (finding that a protective order would adequately address any privacy concerns related to the personnel files of government employees).  Finally, the burden of production would not outweigh the benefit of disclosure where, as here, the Plaintiff agrees to specific protective measures and the government can easily produce the video files in a secure format.  *See N. Shore-Long Island Jewish Health Sys., Inc.*, 325 F.R.D. at 52 (requiring the parties to "adhere to the requirements of the Protective Order in the disclosure of all confidential information").  I therefore recommend that the Defendant be required to produce Videos 1, 4, and 10, subject to a protective order.

2. ***Non-Responsive Videos***

Plaintiff does not appear in Videos 2, 3, 5, 6, 8, 9, 11 and 12 (the "Non-Responsive Videos").  These videos depict a JFK security checkpoint during a different time period and with what appears to be different TSA personnel.  Nothing in the Non-Responsive Videos suggest that

5

the Plaintiff interacted with TSA personnel at this checkpoint – in fact, it is unclear whether the checkpoint depicted in the Non-Responsive Videos is the same checkpoint where Plaintiff alleges that the TSA officer injured him.  In sum, the footage in the Non-Responsive Videos is not relevant to Plaintiff's claims and should not be produced.

Finally, I attempted to review Video 7, but the file was corrupted and stopped playing the video after a few seconds.[2]  I respectfully request that the government provide an uncorrupted copy of Video 7 for *in camera* review.

### III.   Conclusion

For the reasons stated above, I recommend that Plaintiff's motion for discovery be GRANTED in part.  The government should produce Videos 1, 4, and 10 to the Plaintiff pursuant to a protective order, but does not need to produce the Nonresponsive Videos.  The government should also submit an uncorrupted copy of Video 7 to the undersigned for *in camera* review by September 3, 2021.

The parties shall have fourteen days from today to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  *See also* Fed. R. Civ. P. 6(a) and (d).  Failure to file timely objections will preclude appellate review.  *See Thomas*

---

[2] The video failed to play on multiple devices.

*v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED.**

Brooklyn, New York
August 31, 2021

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

**APPENDIX**

| Video Identifier | File Title | Length of Video (mm:ss) | Timestamp Where Plaintiff is Visible (mm:ss) |
|---|---|---|---|
| A | Leytman_VIDEO | 03:44 | 00:00-03:44 |
| B | File ending in -A4164 | 01:30 | 00:00-01:30 |
| C | File ending in -A41711 | 03:00 | 00:05-03:00 |
| D | File ending in -A4217 | 05:42 | 00:09-05:42 |
| 1 | File ending in 154246_82dc84d | 22:21 | 11:29-17:02 |
| 2 | File ending in 154246_82dc84d_2 | 04:37 | N/A |
| 3 | File ending in 154246_82dc84d_3 | 6:56 | N/A |
| 4 | File ending in 154246_ca98fd1 | 22:20 | 13:20-13:24, 13:44-15:14 |
| 5 | File ending in 154246_ca98fd1_2 | 4:36 | N/A |
| 6 | File ending in 154246_ca98fd1_3 | 6:47 | N/A |
| 7 | File ending in 154246_eb3b248 | unknown | unknown |
| 8 | File ending in 154246_eb3b248_2 | 4:37 | N/A |
| 9 | File ending in 154246_eb3b248_3 | 6:53 | N/A |
| 10 | File ending in 154246_e9ddd84 | 22:21 | 13:58-16:53 |
| 11 | File ending in 154246_e9ddd84_2 | 4:39 | N/A |
| 12 | File ending in 154246_e9ddd84_3 | 6:58 | N/A |